UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

HOLSTON BANKS, III,

    Plaintiff,

v.                                               No. 1:19-CV-217-H

HOWARD COUNTY, et al.,

    Defendants.

**ORDER AND MEMORANDUM OPINION**
**GRANTING HOWARD AND MIDLAND COUNTY'S MOTIONS TO DISMISS**

This case stems from the assault of Holston Banks III, a pretrial detainee, by a Howard County employee. According to the complaint, the employee was later arrested for his conduct and resigned from his position. The motions at issue in this order, however, address whether Banks has sufficiently stated claims against Howard County and Midland County for the employee's conduct and the counties' actions in response. Specifically, Banks brings excessive-force and inadequate-medical-care claims against Howard County and Midland County, which the counties move to dismiss for failure to state a claim. Dkt. Nos. 15, 16. Although Banks raises serious and concerning allegations, the counties' motions are granted because Banks has not adequately alleged—as required by binding precedent—that a county policy or custom caused his injuries. Thus, the Court grants the motions without prejudice, and Banks may attempt to cure the pleading defects by filing an amended complaint no later than September 14, 2020.

1. Background[1]

   A. Banks's Complaint

In 2017, Holston Banks III was a pretrial detainee at Midland County Jail. *See* Dkt. No. 1 at ¶ 6. He alleges that, while being transported from Midland County Jail to a hearing in Big Spring, Texas, he was assaulted by John Howard Spence, then an employee of Howard County. *Id.* at ¶¶ 6–30. He further alleges that Howard County and Midland County staff failed to provide medical assistance in accordance with municipal policy or custom. *Id.* at ¶¶ 138–224.

On October 19, 2017, Banks was housed at Midland County Jail and was scheduled for a hearing 40 miles away at the Howard County Courthouse in Big Spring, Texas. *Id.* at ¶ 6. It was at Midland County Jail's booking department where Banks met Spence, a Howard County employee charged with driving Banks to his hearing. *Id.* at ¶ 9. Spence took an aggressive approach with Banks, grabbing his arm and exchanging words with Banks as he led him to the Jail's sally port. *Id.* at ¶ 13. Banks grew increasingly alarmed when he noticed that the transport vehicle, a Black GMC SUV that he later found out was Spence's personal vehicle, was unmarked. *Id.* at ¶¶ 15–16. Spence shackled Banks before allowing him to enter the vehicle. *Id.* at ¶ 18. Once inside, Banks saw that there were two people already in the SUV. One was another inmate who had blood on his face. *Id.* at ¶ 19. The other was Spence's wife, Susana Spence, who was sitting in the passenger seat with a gun on her lap. *Id.* at ¶¶ 22–23.

---

[1] These allegations are taken from Holston Banks III's complaint, which the Court must accept as true when resolving the motions to dismiss. *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016).

Banks yelled for help upon seeing the other people in the vehicle. *Id.* at ¶¶ 25–27. Spence responded by punching Banks in the nose and face several times before putting his hand over Banks's face and mouth. *Id.* at ¶ 27. With Spence's hand covering his nose and mouth, Banks could not breathe, and his nose began to bleed profusely. *Id.* at ¶¶ 27–28. While this was taking place, other Midland County detention officers stood by and made no attempt to intervene. *Id.* at ¶ 30. Spence's attack eventually ended, and the 40-mile drive to the Howard County Courthouse began.[2] *Id.*

During the drive, Spence threatened Banks and told him that he would be sentenced to twenty years in jail if Banks assaulted Spence. *Id.* at ¶ 31. Spence eventually arrived at the Howard County Jail, but not before dropping his wife off at a restaurant. *Id.* at ¶ 35. Once at the Howard County Jail, Banks alerted staff that Spence had assaulted him in the vehicle. *Id.* at ¶ 37. He was then taken to the Courthouse for his hearing, where his parents saw his bloody face. *Id.* at ¶¶ 38–39. When the presiding judge learned of the assault, he said that he had no jurisdiction over what happened. *Id.* at ¶ 42.

After the hearing, Banks was taken back to Howard County Jail and then to Midland County Jail. *Id.* at ¶ 44. Neither the Howard County nor Midland County jail staff provided Banks with medical attention despite Midland County Jail's policy of providing inmates with needed medical attention. *Id.* at ¶¶ 46–48. After Banks requested medical attention over a period of twelve days, Midland County staff took Banks to Midland Memorial Hospital. *Id.* at ¶ 50. X-rays taken by Dr. Paul Weinberg confirmed that Banks

---

[2] According to the complaint, evidence from a subsequent investigation by a Texas Ranger is consistent with Banks's account. Dkt. No. 1 at ¶¶ 59–65. After watching a video of the sally port incident, the Ranger filed a complaint against Spence, and Spence was charged with Official Oppression. *Id.* at ¶ 64. Spence was arrested on October 31, 2017 and subsequently resigned from his position. *Id.* at ¶ 66.

had a broken nose. *Id.* at ¶ 51. Weinberg recommended that Banks see a surgeon for his nose, and Midland County Jail scheduled an appointment. *Id.* at ¶¶ 53–54. Before his appointment, Banks was transferred to Howard County Jail where he was held for one day before being transferred to a Texas Department of Criminal Justice facility. *Id.* at ¶¶ 55–56.

Banks has still not had surgery on his nose, and he suffers from chronic face pain. *Id.* at ¶¶ 68–69. He struggles with breathing through his nose, has constant sinus infections, suffers headaches, and has problems with his vision. *Id.* at ¶ 70.

### B. Howard County's Training

In support of his claim that Howard County is liable for his injuries, Banks alleges that Howard County "did not ensure or require that Defendant Spence receive[] adequate training during his employment with the Howard County Sheriff's Office." *Id.* at ¶ 72. According to Banks, Spence has not completed training in the use of force since November 7, 2012, and he has only attended four trainings for a total of eighteen hours over five years. *Id.* at ¶¶ 73–74. The complaint alleges that lack of training was endemic in Howard County. "Upon information and belief, it was the custom or practice of Howard County to fail to ensure or require that jailers receive[ ] adequate training during their employment with the Howard County Sheriff's Office," and "Defendant Spence was not the only jailer that Howard County failed to ensure was properly and adequately trained." *Id.* at ¶¶ 80–81. Also, Banks maintains that Howard County had a policy of failing to ensure or require that jailers receive adequate training on providing medical care to inmates. *Id.* at ¶ 97.

### C. Howard County's Transportation Policies

Howard County's written policy required transport vehicles to be equipped with a barrier between the inmate and the officer, as well as video or audio recording devices. *Id.*

at ¶¶ 84–85. Banks maintains that Howard County was aware that Spence used his own vehicle to transport prisoners and that Howard County had a de facto policy of allowing jailers to use personal vehicles to transport prisoners. *Id.* at ¶¶ 88, 91.

### D.  Howard County's Medical Care Policies

Howard County's Health Care Services policy requires examinations, treatments, and other medical procedures to be performed in a "reasonable and dignified manner and place." *Id.* at ¶ 93. Howard County's Sick Call policy "provides inmates with the opportunity to report a medical illness or other health problems and to receive diagnosis and treatment to alleviate the condition, if reasonably possible." *Id.* at ¶ 95. Banks maintains that Howard County had a policy of failing to ensure or require that jailers receive adequate training on providing medical care to inmates and that his was not the first time that Howard County failed to provide medical care to inmates in need. *Id.* at ¶¶ 97–101.

### E.  Midland County's Practice of Failing to Give Medical Care to Inmates

Lastly, Banks maintains that Midland County Jail had a custom or practice of failing to provide medical care to inmates in need and that this was not the first time that it had failed to provide medical care to inmates in need. *Id.* at ¶¶ 110–11.

## 2.  Governing Law

### A.  Pleading Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Therefore, a complaint must allege sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Defendants can challenge the sufficiency of a complaint through a motion to dismiss under Rule 12(b)(6).

In evaluating a 12(b)(6) motion, the court must accept all well-pleaded facts as true. *Id*. However, this tenet does not extend to legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. *Twombly* and *Iqbal* apply with equal force to municipal-liability claims, where generic or boilerplate pleadings will not suffice. *Ratliff v. Aransas Cty., Tex.*, 948 F.3d 281, 284 (5th Cir. 2020) (holding that *Twombly* applies to municipal-liability claims).

### B. Banks's Constitutional Claims

Banks brings constitutional claims against Howard County and Midland County under 42 U.S.C. § 1983, which provides a remedy for the deprivation of civil rights by one acting under the color of law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

As a pretrial detainee, Banks roots his constitutional claims in the Fourteenth Amendment. The Due Process Clause forbids the government from imposing conditions on pretrial detainees that amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Therefore, pretrial detainees are protected from excessive force that amounts to punishment. *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (quoting *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)). Similarly, the government must provide for a pretrial detainee's basic needs, such

as medical care. *Shepherd v. Dallas Cty.*, 591 F.3d 445, 453–54 (5th Cir. 2009) (quoting *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996)).

Constitutional claims by pretrial detainees can be brought as either a "condition-of-confinement" claim or as an "episodic-act-or-omission" claim. *Garza v. City of Donna*, 922 F.3d 626, 632 (5th Cir. 2019). In a "condition-of-confinement" claim, the detainee attacks the "general conditions, practices, rules, or restrictions of pretrial confinement." *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (quoting *Hare*, 74 F.3d at 644). Conditions may reflect unstated or de facto policies evidenced by a pattern of acts or omissions "sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail] officials, to prove an intended condition or practice." *Shepherd*, 591 F.3d at 452 (quoting *Hare*, 74 F.3d at 645). Thus, to succeed on a conditions claim, a detainee must prove (1) a rule or restriction, an intended condition or practice, or a de facto policy as evidenced by sufficiently extended or pervasive acts of jail officials; (2) not reasonably related to a legitimate governmental objective; and (3) that caused a violation of his constitutional rights. *Duvall v. Dallas Cty., Tex.*, 631 F.3d 203, 207 (5th Cir. 2011) (citing *Hare*, 74 F.3d at 645).

In an "episodic-act-or-omission" claim, by contrast, the detainee first complains of a specific, one-off action or omission by a municipal employee and then points derivatively to a municipal policy, custom, or rule (or lack thereof) that permitted or caused the act or omission. *Scott*, 114 F.3d at 53. The prison official must exhibit "deliberate indifference" to violate a detainee's constitutional rights. *Hare*, 74 F.3d at 647–48. Under the deliberate-indifference standard, a constitutional violation occurs when a prison official is subjectively aware of a substantial risk of serious harm to a detainee but responds with deliberate

indifference to that risk. *Id.* at 650. Once a constitutional violation has been established, municipal liability hinges on whether "the municipal employee's act resulted from a municipal policy or custom adopted or maintained with objective deliberate indifference to the detainee's constitutional rights." *Id.* at 649 n.4.

### C. Municipal Liability

Municipalities, such as Howard County and Midland County, can be held liable under Section 1983 when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Alternatively, municipal liability may attach where the constitutional deprivation is pursuant to a governmental custom, even if such custom has not received formal approval. *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 166 (5th Cir. 2010) (citing *Monell*, 436 U.S. at 690–91). An unofficial custom satisfies *Monell*'s policy prong when it is "so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Thus, a *Monell* claim has three elements: (1) a policymaker; (2) an official policy, practice, or custom; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

To adequately plead a policy or custom, the plaintiff must do more than describe the incident giving rise to his injury and plead specific facts about the alleged policy. *Ratliff*, 948 F.3d at 285 (citing *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018)). Simply pleading that a practice "is so common and well settled as to constitute a custom" will not suffice. *Id.*

3.     **Analysis**

Banks brings two *Monell* claims against Howard County: (1) a claim based on Spence's use of force; and (2) a claim based on inadequate medical care. Banks also brings one *Monell* claim against Midland County, alleging that the County was deliberately indifferent to his medical needs. Both Howard and Midland County move to dismiss Banks's claims for failure to state a claim. Ultimately, the Court concludes that Banks has not adequately pled a policy, practice, or custom under *Monell* with respect to his excessive-force and inadequate-medical-care claims. Moreover, the Court concludes that Banks has not adequately alleged that Howard County violated his constitutional rights. Accordingly, both motions to dismiss are granted for the following reasons.

A.     **Count Two: Banks's excessive-force claim against Howard County fails to adequately state a claim for relief.**

Banks relies on Spence's assault to assert an excessive-force *Monell* claim against Howard County. He argues that various practices and customs evince the County's tolerance of excessive force by its jail officials. These alleged practices and customs include allowing officials to transport prisoners using personal vehicles and not ensuring training in the use of force. Banks further alleges that Spence violated Banks's constitutional rights because "he did not receive adequate training" and because "Howard County has a practice or custom of not following the written policies regarding use of force and inmate transports." Dkt. No. 1 at ¶ 132. In response, Howard County contends that Banks has not adequately alleged *Monell*'s policy, practice, or custom prong.

For a *Monell* claim to survive a motion to dismiss, the plaintiff must plead specific facts about the alleged policy or custom. *Ratliff*, 948 F.3d at 285. The claim cannot survive if the only alleged facts describe the event giving rise to the cause of action. *Id.* Here, Banks

9

has only described a single event in which he was beaten by an employee of Howard County. While he argues that certain practices or customs led to the beating, he does not provide the Court with enough factual allegations for it to plausibly infer the existence of these practices or customs. Banks's complaint does not identify other instances of misconduct by municipal employees. Instead, he bases the existence of a practice or custom "upon information and belief." Dkt. No. 1 at 10. Vague allegations of this sort are not enough when a plaintiff claims the existence of a practice "so persistent and widespread as to practically have the force of law." *See Peña*, 879 F.3d at 621–22; *see also Thomas v. City of Galveston, Tex.*, 800 F. Supp. 2d 826, 845 (S.D. Tex. 2011) (granting a municipality's motion to dismiss because the complaint did not adequately allege a custom or practice under *Monell*).

While Banks's briefing maintains that he has not alleged a failure-to-train theory, his complaint suggests otherwise. *See, e.g.*, Dkt. No. 1 at 8 ("Howard County's Practice of Failing to Train Jailers."). In any event, Banks's complaint does not adequately plead a failure-to-train theory. "A municipality's culpability for deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61. To prevail on a failure-to-train theory, Banks must plead facts establishing that (1) the municipality's training procedures were inadequate; (2) the municipality was deliberately indifferent in adopting its training policy; and (3) the inadequate training policy directly caused the violations in question. *Ratliff*, 948 F.3d at 285. Deliberate indifference requires "a pattern of violations" resulting from the inadequate training. *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005); *see also Schaefer v. Whitted*, 121 F. Supp. 3d 701, 717 (W.D. Tex. 2015) ("[F]ailure to train or supervise claims generally require the plaintiff to

plead more than one instance of similar constitutional torts, suggesting municipality was on notice of a pattern of similar violations but chose not to act."). Banks's complaint does not allege similar acts that would have put Howard County on notice that its training was inadequate. Accordingly, Banks has not adequately pled a failure-to-train claim.

In light of the above analysis, Banks's excessive-force *Monell* claim against Howard County is dismissed. Banks has not alleged, with specificity, other incidents suggesting a policy or custom. Nor has he alleged similar past instances that would have put Howard County on notice that its use-of-force training was inadequate. Banks's complaint does not give rise to a plausible inference that Banks's beating resulted from an official policy or custom.

    **B.**    **Counts Three and Four: Banks's claims of deliberate indifference to medical care against Howard County and Midland County fail to adequately state a claim for relief.**

Banks also brings a constitutional challenge based on Howard and Midland County's alleged failure to provide adequate medical service. To establish a constitutional violation for inadequate medical care, Banks must show that the general level of medical care provided to pretrial detainees during the time he was detained was not reasonably related to a legitimate government objective and, therefore, punished him in violation of the Fourteenth Amendment. *Estate of Henson v. Wichita Cty., Tex.*, 795 F.3d 456, 467–68 (5th Cir. 2015). If Banks successfully alleges a constitutional violation, he must then allege that it was caused by a municipal policy or custom.

    **i.**    **Banks has not sufficiently alleged that Howard County violated his constitutional rights under a conditions-of-confinement theory.**

Much of the parties' briefing concerns whether Banks's claim should be characterized as challenging an episodic act or omission or a condition of confinement. If

11

Banks's claim is construed as challenging an episodic act or omission, then he must allege that an individual actor showed deliberate indifference to his serious medical need. *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 422 (5th Cir. 2017). By contrast, if his claim is construed as attacking a condition of his confinement, then he need not make the deliberate-indifference showing. *See Henson*, 795 F.3d at 463–64. Here, Bank's complaint does not state facts that would give rise to a constitutional claim against Howard County under either theory.

To succeed on his conditions-of-confinement claim, Banks must show (1) a rule or restriction, an intended condition or practice, or a de facto policy as evidenced by sufficiently extended or pervasive acts of jail officials; (2) not reasonably related to a legitimate governmental objective; (3) that caused a violation of Banks's constitutional rights. *Duvall*, 631 F.3d at 207. In evaluating whether a condition gives rise to a constitutional violation, the proper inquiry is whether the condition amounts to punishment of a detainee. *Bell*, 441 U.S. at 535. "[I]f a particular condition . . . is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id.* at 539. "[A] detainee challenging jail conditions must demonstrate a pervasive pattern of serious deficiencies in providing for his basic needs; any lesser showing cannot prove punishment in violation of the detainee's Due Process rights." *Shepherd*, 591 F.3d at 454. Moreover, the length of confinement is also relevant to a conditions claim. "A filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months." *Hutto v. Finney*, 437 U.S. 678, 686–87 (1978); *see also Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998) (reasoning that confinement for only three days weakened a prisoner's conditions-of-confinement claim).

Given this authority, a brief delay by Howard County in treating a broken nose does not give rise to a constitutional violation. After allegedly being beaten by Spence, Banks was taken to his court hearing, temporarily housed at Howard County Jail, and then driven back to Midland County Jail, where he was held for the next several weeks. Howard County later regained custody of Banks for one day before he was transferred to an unnamed Texas Department of Criminal Justice facility. Dkt. No. 1 at 7. Even accepting the facts that Banks has alleged and viewing those facts in the light most favorable to him, the Court finds that Howard County's alleged actions were reasonably related to efficaciously moving Banks from Midland County, where he was being held, to his court hearing, and then back to Midland County Jail where he was confined. Therefore, Banks has not adequately alleged that Howard County violated the Fourteenth Amendment by punishing him. *See Bell*, 441 U.S. at 539; *see also Rogers v. Boatright*, 709 F.3d 403, 410 (5th Cir. 2013) (finding that prison officials did not act with deliberate indifference to a prisoner's medical needs by making a decision that resulted in a five-hour treatment delay).

      ii.    **Nor has Banks sufficiently alleged that Howard County violated his constitutional rights under an episodic-acts-or-omissions theory.**

For similar reasons, Banks has not adequately alleged that Howard County violated his constitutional rights under an episodic-acts-or-omissions theory. To succeed on his episodic-acts claim, Banks must show that a municipal employee violated his clearly established constitutional rights with subjective deliberate indifference. *Garza*, 922 F.3d at 634 (citing *Brumfield v. Hollins*, 551 F.3d 322, 331 (5th Cir. 2008)). An official exhibits deliberate indifference when he is subjectively aware of a substantial risk of serious harm to a pretrial detainee but responds with deliberate indifference to that risk. *Hare*, 74 F.3d at 650. Here, Banks alleges that he had a visibly bloody nose during his hearing and brief

13

detention in Howard County. Dkt. No. 1 at ¶¶ 37–44. The appearance of a bloody nose during the short time that Banks was in Howard County's custody is not enough for the Court to plausibly infer that Howard County officials "had subjective knowledge of a *substantial risk of serious harm* to a pretrial detainee," as is needed to establish deliberate indifference. *See Hare*, 74 F.3d at 650 (emphasis added). Accordingly, Banks has not adequately alleged a constitutional violation against Howard County under an episodic-acts theory.

        iii.    **Banks has not adequately alleged a policy, practice, or custom against either Howard County or Midland County.**

Moreover, Banks has not adequately alleged *Monell*'s policy prong with respect to Howard County or Midland County. Again, Banks has provided generic, boilerplate recitations of the elements of a *Monell* claim. His complaint asserts that there was a pattern of inadequate medical care caused by a failure to train, a failure to supervise, or by improper hiring. Vague, conclusory allegations such as these do not allow the Court to plausibly infer the existence of a practice or custom so widespread as to have the force of law. *See Ratliff*, 948 F.3d at 285; *Peña*, 879 F.3d at 621–22. Accordingly, Howard and Midland County's motions to dismiss are granted.

    **C.**    **Banks may amend his complaint to include additional factual allegations.**

In addition to arguing that his complaint should survive a motion to dismiss under Rule 12(b)(6), Banks has also requested leave to amend his complaint. Dkt. No. 17 at ¶ 9; Dkt. No. 19 at ¶ 8. The Court finds it appropriate to grant leave to amend. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."); *see also Tex. Indigenous Council v. Simpkins*, 544 F. App'x 418, 421 (5th Cir. 2013) ("Granting leave to amend is especially appropriate . . . when the trial court has dismissed the

complaint for failure to state a claim.") (quoting *Griggs v. Hinds Junior Coll.*, 563 F.2d 179, 180 (5th Cir. 1977)).  Banks's amended complaint must be filed no later than September 14, 2020.

4.  **Conclusion**

For the above reasons, Banks's claims against Howard County and Midland County are dismissed without prejudice.  The Court will allow Banks to amend his complaint by September 14, 2020 to attempt to cure the deficiencies identified in this order.  If Howard or Midland County believe the deficiencies persist, they may reassert their motions to dismiss.  Banks's claim against Spence remains pending.

So ordered August 26, 2020.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE

15