UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

HOLSTON BANKS III,

      Plaintiff,

v.

JOHN SPENCE,

      Defendant.

No. 1:19-CV-217-H

**ORDER DENYING MOTION TO AMEND AND**
**GRANTING JUDGMENT ON THE PLEADINGS**

      Plaintiff Holston Banks III claims to have suffered a grave constitutional violation at the hands of defendant John Spence.  His complaint describes an unwarranted physical assault by Spence shortly before transporting Banks to a court hearing.  Irrespective of the concerning facts alleged, however, Banks fails to assert a cognizable claim for relief under the Fourteenth Amendment due to his status as a convicted prisoner at the time of the alleged offense.  Further, Banks has not shown good cause to amend his complaint at this late stage of the proceedings.  The Court does not take lightly the gravity of Banks's allegations.  But it will not grant him his requested relief in light of his unjustifiably late motion to amend and the undisputed legal error contained in his complaint.  Therefore, the Court denies Banks's Motion to Amend Pleadings (Dkt. No. 53) and grants Spence's Motion for Judgment on the Pleadings (Dkt. No. 52).  Spence's Motion for Summary Judgment (Dkt. No. 60) and the parties' Joint Motion for Continuance of Pretrial Deadlines and Trial (Dkt. No. 75) are denied as moot.

1.      **Factual Background**

The Court recounts the facts of this case in the light most favorable to Banks, as it must for purposes of resolving the pending motion for judgment on the pleadings.  *See Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).  On October 4, 2017, a jury convicted Banks of a drug offense, and he was sentenced to a five-year term of imprisonment.  Dkt. No. 52-1.  On October 19, 2017, during his incarceration at the Midland County Jail, Banks was escorted to a location where he met John Spence, his transport officer.  Dkt. No. 1 ¶¶ 9–10.  According to Banks, Spence "began yelling and threatening to take [Banks] to the Huntsville prison," but jail staff clarified that his destination was the Howard County Courthouse.  *Id.* ¶¶ 11–12.  Spence grabbed Banks tightly by the arm and "sp[oke] aggressively" towards him as he led him to the sally port.  *Id.* ¶ 13.

On the way to the sally port, Banks started to exchange words with Spence in response to his "harassing comments."  *Id.* ¶ 14.  Spence then restrained Banks's hands and legs in shackles.  *Id.* ¶ 18.  Banks claims that he feared for his safety for several reasons: (1) Spence's vehicle was unmarked; (2) another inmate being transported had blood on his face, which Banks believes resulted from an assault from Spence; and (3) an unknown woman was sitting in the passenger seat with a gun in her lap.  *Id.* at ¶¶ 15–17, 20–24.  Banks thought "something was seriously wrong" so yelled for help, which prompted Spence to punch him several times in the face and cover his nose and mouth with his hand.  *Id.*  Banks could not breathe, and his nose began bleeding profusely.  *Id.* ¶¶ 28.

The assault eventually ended, and the drive to the Howard County Courthouse began.  *Id.* ¶ 30.  While in route, Banks claims that Spence threatened him with more jail time if he attempted to retaliate or escape.  *Id.* ¶¶ 32–33.  Upon arrival, Banks participated in

the scheduled hearing.  *Id.* ¶¶ 38, 43.  He notified the presiding judge of Spence's conduct, but the judge said that he lacked jurisdiction over what happened.  *Id.* ¶ 42.  After the hearing, Banks returned to the Midland County Jail.  *Id.* ¶ 44.

About two weeks later, after repeated requests by Banks for medical attention, jail staff took him to the hospital.  *Id.* ¶ 50.  An x-ray confirmed that Banks had a broken nose. *Id.* ¶ 51.  Banks claims that the doctor recommended him to see a surgeon, so the Midland County Jail scheduled an appointment.  *Id.* ¶¶ 53–54.  But Banks was transferred to another facility before he could attend the appointment.  *Id.* ¶¶ 55–57.  Having never received treatment for his broken nose, Banks complains of breathing problems, sinus infections, headaches, and vision problems.  *Id.* ¶ 70.

### 2.    Procedural History

Banks brought a 42 U.S.C § 1983 claim against Spence in October 2019, alleging that Spence used excessive force against him and, consequently, deprived him of his rights secured by the Fourteenth Amendment.  *Id.* ¶¶ 115–24.  Banks also brought several *Monell* claims against other defendants (*id.* ¶¶ 125–221), but those claims and defendants have since been dismissed (Dkt. Nos. 27 at 15; 29 at 1; 30).  Trial for Banks's lone surviving claim is scheduled for January 17, 2023.  Dkt. No. 51.

The deadline for the parties to amend their pleadings was initially set on May 2, 2022—more than two-and-a-half years after Banks filed his complaint.  Dkt. No. 34 at 1; *see* Dkt. No. 1.  The Court's scheduling order cautioned that no party could extend that deadline without "leave of court, upon a showing of good cause."  Dkt. No. 34 at 3.  The Court later extended the deadline to May 25, 2022, recognizing that, even though the parties had not shown good cause, a brief extension was warranted because neither party

– 3 –

opposed it and Spence had only recently retained defense counsel. Dkt. No. 42. But the Court made no further allowances after that point. Spence timely filed an amended answer (Dkt. No. 44), but Banks did not amend his complaint.

In late September, Spence moved for judgment on the pleadings. Dkt. No. 52. Spence argues that because "a convicted prisoner may only bring a claim for excessive force under the Eighth Amendment," Banks's excessive-force claim under the Fourteenth Amendment lacks merit. *Id.* at 1. Alternatively, Spence argues that even if Banks brought his claim under the Eighth Amendment, he has failed to allege facts showing that Spence used excessive force. *Id.* at 7. In response, Banks insists that he *has* pled facts to support an excessive-force claim under the Eighth Amendment, but he "concedes that the Fourteenth Amendment . . . is inapplicable to [the] excessive force claim [because] [Banks] was a convicted prisoner at the time [of the offense]." Dkt. No. 66 at 1.

"In light of [Spence's] motion" for judgment on the pleadings, Banks moved to amend his complaint to assert his excessive-force claim under the correct amendment. Dkt. No. 53 at 1–2. Banks explains that his counsel "w[ere] not aware that [he] was convicted" at the time of the offense due to the "just two-week gap" between the date of his conviction and the date of the altercation with Spence. *Id.* at 3–4. Banks argues that an amendment in this case would not prejudice Spence because it "[would] not alter the facts underlying the claim but simply the standard by which the Court will analyze" it. *Id.* at 7.

In response, Spence counters that Banks has failed to satisfy the good-cause standard because he has not "show[n] that, despite the exercise of diligence, he could not [have] amend[ed] his [c]omplaint prior to the deadline." Dkt. No. 55 at 1. Spence contends that

Banks's counsel could have uncovered his prisoner status well before the deadline through "basic fact gathering" and "background legal research." *Id.* at 8–10.

In reply, Banks concedes that "if [the explanation for untimely seeking amendment] alone were to be looked at, it would most likely weigh against a finding of good cause." Dkt. No. 66 at 3. Still, he maintains that the importance of the amendment in this case coupled with the lack of prejudice to Spence outweighs his counsel's lack of diligence in timely seeking amendment. *Id.* at 7.

Both Spence's Motion for Judgment on the Pleadings (Dkt. No. 52) and Banks's Motion to Amend Pleadings (Dkt. No. 53) are ripe for review.[1]

## 3.   Legal Standards

### A.   Motion to Amend

When the deadline to amend pleadings has expired, a movant must demonstrate "good cause" to extend that deadline. *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003); *see* Fed. R. Civ. P. 16(b)(4) (providing that a party may only modify a scheduling order "for good cause and with the judge's consent"). The good-cause standard "requires" a "showing by the movant that 'the deadlines cannot reasonably be met despite the diligence of the party needing extension.'" *Olivarez v. T-Mobile USA, Inc.*, 997 F.3d 595, 602 (5th Cir. 2021) (quoting *S&W Enters.*, 315 F.3d at 535). Courts consider four factors in determining whether a movant has demonstrated good cause: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the

---

[1] Spence has also moved for summary judgment (Dkt. No. 60), to which Banks has responded (Dkt. No. 69). Spence's reply is due on December 13, 2022. Dkt. No. 74. The Court refrains from analyzing the merits of the motion at this stage given the potential for resolution based on the preceding motions.

amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *S&W Enters.*, 315 F.3d at 536; *Filgueira v. U.S. Bank Nat. Ass'n*, 734 F.3d 420, 422 (5th Cir. 2013). A court should assess these factors "holistically." *EEOC v. Service Temps, Inc.*, No. 3:08-CV-1552-D, 2009 WL 3294863, at *3 (N.D. Tex. Oct. 13, 2009) (Fitzwater, J.). "It [should] not mechanically count the number of factors that favor each side. And it [must] remember[] at all times that the good cause inquiry focuses on the diligence of the party seeking to modify the scheduling order." *Id.* Only if a court determines that a party has "show[n] good cause for missing the deadline" for amendment will the "more liberal" standard of Rule 15(a) then apply. *Filgueira*, 734 F.3d at 422 (internal citation omitted).

### B.   Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) provides that "[a]fter pleadings are closed . . . a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A Rule 12(c) motion for judgment on the pleadings "is designed to dispose of cases where the material facts are not in dispute[2] and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hale v. Metrex Rsch. Corp.*, 963 F.3d 424, 427 (5th Cir. 2020). The standard for analyzing a motion for judgment on the pleadings "is identical to the standard for [a] Rule 12(b)(6) motion[] to dismiss for failure to state a claim." *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019). To survive, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A

---

[2] Spence concedes to the facts alleged in Banks's complaint "for purposes of [his motion for judgment on the pleadings] only." Dkt. No. 52 at 4.

complaint fails to state a claim when it "[f]ail[s] to plausibly allege an essential element" of that claim. *Arnold v. Williams*, 979 F.3d 262, 269 (5th Cir. 2020).

## 4.   Analysis

### A.   The Court denies Banks's motion to amend his complaint because he has failed to show good cause.

Before the Court determines whether it can resolve this case on the pleadings, it must determine whether Banks has shown good cause to extend the deadline to amend his complaint. For the reasons below, the Court finds that he has not.

#### i.   Banks cannot provide a sufficient explanation for his untimely motion to amend.

The first factor of the good-cause analysis turns on the movant's explanation for his failure to timely move for leave to amend. *S&W Enters.*, 315 F.3d at 536. Here, Banks has failed to provide a sufficient explanation.

"Diligence in purs[u]ing a claim is the most important factor bearing on the 'good cause' inquiry." *O'Connor v. Cory*, No. 3:16-CV-1731-B, 2018 WL 5848860, at *4 (N.D. Tex. Nov. 8, 2018) (Boyle, J.) (internal quotation marks and citation omitted); *Williams v. Waste Mgmt., Inc.*, No. 3:16-CV-2943-L-BN, 2018 WL 3803917, at *2 (N.D. Tex. June 29, 2018) (Horan, J.) (finding that a plaintiff's "lack of diligence in timely amending his pleadings [wa]s paramount" to the good-cause analysis). "[T]he movant must show that, despite his diligence, he could not have reasonably obtained the information needed to amend his complaint before the scheduling deadline." *Thomas v. St. Joseph Health Sys.*, No. 5:20-CV-028-H, 2022 WL 4349319, at *6 (N.D. Tex. Sept. 19, 2022) (Hendrix, J.) (internal quotation marks and citation omitted). "[T]he standard is 'good cause,' and the good cause standard focuses on the diligence of the party seeking to modify the scheduling order."

*Hernandez v. Groendyke Transp., Inc.*, No. 3:21-CV-0108-D, 2022 WL 487915, at *2 (N.D. Tex. Feb. 17, 2022) (Fitzwater, J.) (quoting *Matamoros v. Cooper Clinic*, No. 3:14-CV-0442-D, 2015 WL 4713201, at *3 (N.D. Tex. Aug. 7, 2015) (Fitzwater, J.)).

A movant's failure to realize an error in his complaint until the opposing party brings that error to light shows a lack of diligence. *See Valcho v. Dallas Cnty. Hosp. Dist.*, 658 F. Supp. 2d 802, 815 (N.D. Tex. 2009) (Fitzwater, J.) (finding no justification for an untimely amendment when an attorney "was not aware that . . . claims in her complaint might be insufficient until [the defendant] filed its motion for summary judgment"); *see also Taylor v. Trevino*, 569 F. Supp. 3d 414, 429 (N.D. Tex. 2021) (Fitzwater, J.) ("Mere inadvertence on the part of the movant is insufficient to constitute 'good cause.'").

A lack of diligence is especially apparent when the movant had access to records relevant to the amendment throughout the litigation but failed to timely review those records. *See Lopez v. Reliable Clean-Up & Support Servs., LLC*, No. 3:16-CV-2595-D, 2018 WL 3609271, at *4 (N.D. Tex. July 27, 2018) (Fitzwater, J.) (declining to find good cause when a party had possessed documents relevant to amendments for at least eighteen months before moving to amend its complaint); *Shofner v. Shoukfeh*, No. 5:15-CV-152-C, 2017 WL 3841641, at *2 (N.D. Tex. Apr. 7, 2017) (Cummings, J.) (denying leave to amend where the plaintiff "had access to all . . . [relevant] medical records early in the case, yet waited more than a year after filing suit to first hire expert witnesses to review the records").

Banks has not shown the requisite diligence to justify his untimely motion to amend. Banks filed his complaint on October 18, 2019.  Dkt. No. 1.  The Court gave him until May 25, 2022, to make any amendments to his complaint.  Dkt. No. 42.  Banks made none.  On September 30, 2022, Spence moved for judgment on the pleadings, alleging that Banks's

complaint contained a fatal legal error.  Dkt. No. 52.  Only then did Banks move for leave

to amend.  Dkt. No. 53.  Despite having had three years prior to Spence's motion to attempt

to amend his complaint, he made no such effort.  This sequence of events makes clear that

Banks would have remained ignorant of the alleged error in his complaint apart from

Spence putting him on notice of it.  Now, all discovery and motion deadlines have passed,

and trial is less than two months away.  *See* Dkt. Nos. 34; 42; 51.  Bank's extreme delay in

seeking amendment—and only when confronted face-to-face with the possibility of defeat

on the merits—shows a lack of diligence.  *See Bhatti v. Concepts Am. Inc.*, No. 3:14-CV-3445-

L, 2016 WL 11733649, at *2 (N.D. Tex. Aug. 15, 2016) (Lindsay, J.) (finding that the

"oversight of [the plaintiff's counsel] in failing to realize, until after the [defendants] filed

their Rule 12(c) motion," that the complaint mischaracterized the plaintiff's theory for relief

could not justify an amendment three years after the complaint was filed).

Even more troubling than Banks's delay in seeking amendment is the accessibility of

the information that grounds his proposed amendment.  Banks seeks to amend his

complaint to comport with the fact that at the time of the alleged offense, he was a

convicted prisoner—not a pretrial detainee, as presently alleged in his complaint and

previously understood by his counsel.  Dkt. No. 53 at 1–2.  His counsel explain that they

initially classified Banks as a pretrial detainee due to a pending burglary charge against him

at the time of the alleged offense.  Dkt. No. 52 at 3–4.  They had not realized that Banks had

separately been convicted for another charge just two weeks beforehand.  *Id.*  Banks's

transition between legal statuses in the midst of ongoing criminal proceedings against him

may justify his counsel's initial mistake.  But it cannot justify their failure to identify his

correct status until *five years* after his conviction (*see* Dkt. No. 52-1) and *three years* after filing

his complaint (*see* Dkt. No. 1).  Spence rightfully notes that Banks's counsel could have obtained this information at any point in the proceedings through various avenues, whether a cursory interview with Banks, an internet search of his criminal history, or an inspection of publicly available records.  Dkt. No. 55 at 9–10.

In addition to the general availability of the relevant information, Banks's counsel received concrete notice of Banks's prisoner status at three points in the litigation: (1) when Spence's counsel produced Banks's conviction records on August 11, 2022; (2) when Banks acknowledged his prisoner status during a deposition on August 16, 2022; and (3) when Spence's counsel provided notice of their forthcoming motion for judgment on the pleadings on August 29, 2022.  Dkt. No. 55 at 6.  Still, Banks did not move to amend his complaint until early October 2022.  *See* Dkt. No. 53.  His counsel explain that because a senior attorney "had a breakdown in communication" with Banks, a junior associate handled the August 2022 discovery and deposition of Banks and "did not appreciate the significance" of the newfound information.  Dkt. No. 62 at 4.  But a senior attorney's choice to entrust a first-year associate to "tak[e] the lead" on the case and to apparently refrain from reviewing any discovery himself cannot justify his ignorance to information critical to the life of the suit.  *See id.*  Regardless, as discussed above, more concerning is the fact that Banks's counsel could have obtained this information through a variety of other methods—well before the August 2022 revelations—but failed to do so.

Despite Banks's counsel's tenuous explanation for their failure to amend sooner, they ultimately admit that the "misunderstanding on the conviction date was no doubt an error by counsel" and that if the Court considered the sufficiency of their explanation alone, "it would most likely weigh against a finding of good cause."  Dkt. No. 62 at 3–4.  The Court

agrees that Banks has failed to provide a sufficient explanation for his untimely motion to amend. Therefore, the first—and most important—factor of the good-cause analysis weighs against allowing his proposed amendment.

> ### ii.   The proposed amendment is important.

The second good-cause factor surrounds the importance of the amendment to the broader litigation. *S&W Enters.*, 315 F.3d at 536. This factor favors Banks.

Courts deem an amendment to be important when it directly impacts a party's prospect of recovery. *Feldman v. Stryker Corp.*, No. 3:18-CV-1416-S, 2020 WL 2507684, at *2 (N.D. Tex. May 15, 2020) (Scholer, J.) (quoting *Kouzbari v. Health Acquisition Co.*, No. 3:18-CV-0126-D, 2018 WL 6514766, at *3 (N.D. Tex. Dec. 11, 2018) (Fitzwater, J.)); *see also Lynch v. Pizza Hut, LLC*, No. 7:21-CV-00094-O, 2022 WL 9246695, at *2 (N.D. Tex. Sept. 13, 2022) (O'Connor, J.) (finding an amendment to be important because "[i]f [the plaintiff] [wa]s not granted leave to amend, her case [would be] over, and final judgment [would] issue"); *Davis v. Dallas County*, 541 F. Supp. 2d 844, 849 (N.D. Tex. 2008) (Fitzwater, J.) (finding an amendment to be important where it would preclude the dismissal of the plaintiffs' claims).

Here, Banks's prospect of recovery depends on whether he can amend his complaint. His original complaint alleges an excessive-force claim against Spence under the Fourteenth Amendment, discussing the reasonable-officer standard and mistakenly labeling Banks as a pretrial detainee. Dkt. No. 1 ¶¶ 7, 155–24. In contrast, his amended complaint would bring his excessive-force claim under the Eighth Amendment, instead analyzing the intent-to-punish standard and correcting Banks's status to that of a convicted prisoner. Dkt. No. 53-1 ¶¶ 70–94. As discussed more below (*see infra* Section 4.B), only a pretrial detainee may

assert a claim of excessive force under the Fourteenth Amendment; a convicted prisoner, on the other hand, must assert such a claim under the Eighth Amendment. *See Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015). Therefore, Banks—indisputably a convicted prisoner at the time of the alleged offense—cannot state a plausible claim for relief under the Fourteenth Amendment, as his complaint is currently pled. Apart from his proposed amendment, then, his claim will fail, and he will not recover.

But the parties do not dispute whether Banks's complaint is flawed as currently pled (*see* Dkt. Nos. 52 at 1; 66 at 1); the question is whether, if Banks properly frames his claim under the Eighth Amendment, it will survive. The Court finds that it would. Banks alleges that Spence punched him repeatedly in the face, breaking his nose, all while Banks was restrained in shackles and not attempting to fight back or escape. Dkt. No. 53-1 ¶¶ 16, 25–26, 49–50, 59, 79. Taking these facts as true, the violent force exerted by Spence exceeded the amount needed to quell what Banks characterizes as a mere verbal disturbance. His claims therefore support a finding under the Eighth Amendment that Spence exercised force "maliciously and sadistically for the very purpose of causing harm."[3] *See Whitley v. Albers*, 475 U.S. 312, 320–21 (1986); *see also Valencia v. Wiggins*, 981 F.2d 1440, 1443, 1447 (5th Cir. 1993) (holding that a guard "used force maliciously and sadistically" when he placed a prisoner who caused a verbal disturbance and refused orders in a choke hold and then struck him at least three times while he was handcuffed); *Morris v. Trevino*, 301 F. App'x 310, 313 (5th Cir. 2008) (holding that a plaintiff stated a valid excessive-force claim under the Eighth

---

[3] In determining Spence's intent, the Court considers "the well-known *Hudson* factors—'the extent of injury suffered, the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.'" *Cowart v. Erwin*, 837 F.3d 444, 452–53 (5th Cir. 2016) (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

Amendment because "the force exerted by [the defendant] was disproportionate to the amount of force necessary to maintain or restore order"). The Court thus finds that Banks's amended complaint would survive judgment on the pleadings.

Because Banks's proposed amendment could make the difference between any recovery or none at all, the second factor of the good-cause analysis weighs in favor of permitting him to amend his complaint.

### iii. Allowing an amendment would prejudice Spence to a certain extent, and a continuance would cure some of that prejudice.

The Court will consider the third and fourth factors of the analysis together. The third factor asks whether allowing a late amendment will prejudice the nonmovant and, if so, the fourth asks whether a continuance would cure that prejudice. *S&W Enters.*, 315 F.3d at 536. In this case, allowing Banks's amendment would prejudice Spence to a certain degree, and a continuance would cure some of that prejudice.

Courts have held that an untimely motion for leave to amend can prejudice the nonmovant "by prolonging the litigation, delaying the resolution of the case, and requiring that party to file new dispositive motions." *Shaunfield v. Experian Info. Sols., Inc.*, No. 3:12-CV-4686-M (BH), 2013 WL 12354439, at *6 (N.D. Tex. Dec. 20, 2013) (Lynn. J.) (citing *Lindsey v. Ocwen Loan Servicing, LLC*, No. 3:10-CV-967-L, 2011 WL 2550833, at *5 (N.D. Tex. June 27, 2011) (Lindsay, J.)). Courts have also found prejudice when an amendment "drastically reframe[s] [a] suit" in the face of impending deadlines or an upcoming trial date. *Guardian Techs., LLC v. Radio Shack Corp.*, No. 3:09-CV-00649-B, 2010 WL 11534474, at *3 (N.D. Tex. Aug. 13, 2010) (Boyle, J.); *see also King v. Life Sch.*, No. 3:10-CV-0042-BH, 2011 WL 5242464, at *2 (N.D. Tex. Nov. 3, 2011) (Ramirez, J.) (finding prejudice when an

amendment "essentially restart[ed] the lawsuit for amended pleadings, discovery, and motions" after over a year and a half of litigation).

Courts "more carefully scrutinize a party's attempt to raise new theories of recovery by amendment when the opposing party has filed a [dispositive motion]." *Parish v. Frazier*, 195 F.3d 761, 764 (5th Cir. 1999); *see Valcho v. Dall. Cnty. Hosp. Dist.*, 658 F. Supp. 2d 802, 815 (N.D. Tex. 2009) ("This court has frequently found prejudice when a party seeks leave to amend after the opposing party has filed a motion for summary judgment.") (Fitzwater, J.). Courts have recognized that permitting a plaintiff to amend his complaint following a defendant's dispositive motion often "undermine[s] the [defendant]'s right to prevail on a motion that necessarily was prepared without reference to an unanticipated amended complaint." *Overseas Inns S.A. P.A. v. United States*, 911 F.2d 1146, 1151 (5th Cir. 1990). For that reason, a plaintiff "should not, without adequate grounds, be permitted to avoid [] judgment by the expedient of amending [his] complaint." *Id.*

Allowing Banks to amend his complaint at this late juncture would cause prejudice in two ways. First, it would prejudice this Court's and the parties' common interest in the timely resolution of this dispute. This case has already persisted for over three years (*see* Dkt. No. 1), and trial is less than two months away (*see* Dkt. No. 51). The filing of Banks's amended complaint would require Spence to file new pleadings and motions responding to the operative complaint and, potentially, engage in more discovery regarding Banks's new cause of action. Under the current schedule, Spence lacks the time necessary to complete these tasks and also meet the impending pretrial deadlines and prepare for a trial in January. A continuance could, of course, alleviate this pressure, but at the same time, it would further delay a final resolution in this case, which would prejudice the parties.

– 14 –

Second, given that Banks moved to amend his complaint in response to Spence's motion for judgment on the pleadings, allowing an amendment would frustrate Spence's interest in obtaining a judgment on the basis of his motion. The Court and the parties alike acknowledge that Banks has incorrectly asserted his excessive-force claim under the Fourteenth Amendment. To allow Banks to avoid dismissal by retroactively curing an error identified by his opponent would prevent Spence from obtaining a fair outcome based on his attorney's labor and expertise. The amount of time that has passed since Banks filed his original complaint only exacerbates this prejudice, as Spence has now—after three years of litigation, the completion of discovery, and the expiration of the deadline to amend pleadings—developed an expectation in prevailing on a sure-fire legal theory that Banks has overlooked until now. Put simply, Spence has earned the right to succeed on the merits of his motion, and to deny him this right would cause him prejudice.

One factor does, however, mitigate the prejudice to Spence: the similarity of Banks's amended complaint to his original complaint. Although each version presents a different claim for relief, each relies largely—if not entirely—on the same facts, discovery, and accusations regarding Spence's treatment of Banks before transporting him on October 19, 2017. *Compare* Dkt. No. 1, *with* Dkt. No. 53-1. Given this overlap, "granting [Banks] leave to file [his] amended complaint w[ould] not prejudice [Spence] by complicating the case and needlessly increasing the expense of the case." *See Sustainable Modular Mgmt., Inc. v. Travelers Lloyds Ins. Co.*, No. 3:20-CV-1883-D, 2021 WL 4822017, at *7 (N.D. Tex. Oct. 15, 2021) (Fitzwater, J.); *see also Clapper v. Am. Realty Invs., Inc.*, No. 3:14-CV-2970-D, 2017 WL 978098, at *4 (N.D. Tex. Mar. 14, 2017) (Fitzwater, J.) (finding that a new claim did not prejudice the defendant because the claim "shared many factual predicates with [the

plaintiffs'] existing claims").  Even more, Spence has already briefed his pending dipositive motions through the lens of an Eighth Amendment analysis.  Dkt. Nos. 52 at 7–10; 60 at 16–30; 67 at 2–5.  The attention already paid by Spence to the issue suggests that (1) he has anticipated that Banks might amend his complaint to bring his excessive-force claim under the Eighth Amendment, and (2) he would not need to "restart" with responsive pleadings and motions because he has already extensively analyzed the issue.

On balance, though permitting Banks to amend his complaint would prolong these proceedings and undercut Spence's expectation in prevailing on a dispositive motion, the overlap between Banks's original and amended claims would relieve him substantially of this prejudice.  The effect of a continuance is negligible, as it would both cure and cause prejudice to some degree.  Based on these competing variables, the Court finds that the third and fourth good-cause factors do not materially affect the analysis.

### iv.   Upon weighing all of the factors, Banks cannot show good cause for an amendment.

Upon considering the factors holistically, the Court finds that Banks has failed to show good cause for his untimely motion to amend.  Despite the importance of his proposed amendment and the neutralized prejudice to Spence, Banks has failed to demonstrate diligence—the most important factor.  Courts in this district have consistently "denie[d] motions to amend [a] scheduling order when the moving party fails to demonstrate that, despite its diligence, it could not have reasonably met the scheduling deadline."  *Cub USA Servs., LLC v. Jetta Operating Co., Inc.*, No. 3:14-CV-2508-D, 2016 WL 1028128, at *2 (N.D. Tex. Mar. 15, 2016) (Fitzwater, J.); *see, e.g.*, *Mallory v. Lease Supervisors, LLC*, No. 3:17-CV-3063-D, 2019 WL 3253364, at *4 (N.D. Tex. July 19, 2019) (Fitzwater, J.) (finding that even where "the amendment [wa]s important, . . . the undue prejudice

factor either favor[ed] granting leave to amend or [wa]s neutral, and . . . the availability of a continuance favor[ed] granting leave to amend," good cause did not exist because the movant failed to show diligence); *Matamoros*, 2015 WL 4713201, at *3 (same); *Hernandez*, 2022 WL 487915, at *2 (same).

Ultimately, "the standard is 'good cause,' and the good cause standard focuses on the diligence of the party seeking to modify the scheduling order." *Hernandez*, 2022 WL 487915, at *2. Here, Banks has failed to show the diligence necessary to establish good cause, so the Court denies him leave to amend his complaint.

### B.   Banks's complaint as currently pled cannot survive Spence's motion for judgment on the pleadings.

"Section 1983 is not itself a source of substantive rights; it merely provides a method for vindicating already conferred federal rights." *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003) (citing *Albright v. Oliver*, 510 U.S. 266, 271 (1994)). A plaintiff must therefore identify a specific right secured by the Constitution or laws of the United States that has been violated. *Baker v. McCollan*, 443 U.S. 137, 140 (1979). "A section 1983 complaint must plead specific facts and allege a cognizable constitutional violation" in order to state a claim for relief. *Mills v. Crim. Dist. Ct. No. 3*, 837 F.2d 677, 678 (5th Cir. 1988).

"[T]he Eighth Amendment . . . serves as the primary source of substantive protection to convicted prisoners in cases . . . where the deliberate use of force is challenged as excessive and unjustified." *Whitley*, 475 U.S. at 327. It cautions specifically against "cruel and unusual punishments." U.S. Const. amend. VIII. "[O]bduracy and wantonness . . . characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley*, 475 U.S. at 319. Therefore, in analyzing an Eighth Amendment excessive-force claim, the key inquiry is "whether force was applied in a good faith effort to maintain or

restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 320–21 (internal quotation marks and citation omitted).

Unlike convicted prisoners, "pretrial detainees . . . cannot be punished at all, much less 'maliciously and sadistically.'" *Kingsley*, 576 U.S. at 400. For this reason, "[t]he constitutional rights of a pretrial detainee . . . flow from [] the procedural and substantive due process guarantees of the Fourteenth Amendment." *Kitchen v. Dallas County*, 759 F.3d 468, 477 (5th Cir. 2014). In contrast to the subjective standard that characterizes Eighth Amendment excessive-force claims, "the appropriate standard for a pretrial detainee's excessive force claim is solely an objective one." *Kingsley*, 576 U.S. at 397. "[P]roof of intent (or motive) to punish is [not] required." *Id.* at 398. Rather, the analysis turns on "the reasonableness . . . of the force used." *Id.* at 397.

The parties agree that Banks cannot state a plausible claim for relief under the Fourteenth Amendment, so the Court will not belabor the point here. *See* Dkt. Nos. 52 at 1; 66 at 1. The Supreme Court has made clear the difference between excessive-force claims brought under the Eighth Amendment and those brought under the Fourteenth Amendment. *Kingsley*, 576 U.S. at 400 ("The language of the two Clauses differs, and the nature of the claims often differs."). Each type of claim protects a different type of plaintiff in a different set of circumstances. In particular, a convicted prisoner must assert any claim of excessive force claim under the Eighth Amendment because it "is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions." *Whitley*, 475 U.S. at 327. In contrast, the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment's Cruel and Unusual Punishments Clause, applies to a pretrial detainee who "cannot be punished at all." *See Kingsley*, 576 U.S. at 400. Each type of excessive-force

claim also invites a different type of legal analysis—objective reasonableness versus subjective intent. *Compare Kingsley*, 576 U.S. at 397, *with Whitley*, 475 U.S. at 320–21. In light of these differences, the Supreme Court has held that "[t]he validity of [an excessive-force] claim must [] be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized 'excessive force' standard." *Graham v. Connor*, 490 U.S. 386, 394 (1989).

Banks's claim cannot survive in the face of this precedent distinguishing Eighth-Amendment excessive-force claims from Fourteenth Amendment excessive-force claims. Banks was indisputably a convicted prisoner at the time of the alleged offense.[4] But he brought his claim of excessive force under the Fourteenth Amendment. Dkt. No. 1 ¶ 116. Therefore, as a matter of law, he fails to state a claim for which relief can be granted "because the Fourteenth Amendment protects pretrial detainees, not convicted prisoners." *See Waddleton v. Rodriguez*, 750 F. App'x 248, 253 (5th Cir. 2018); *see also Jenkins v. Ellis Cnty., Texas*, No. 3:05-CV-1824-P, 2007 WL 9712115, at *3 (N.D. Tex. Dec. 19, 2007) (Solis, J.) (finding that "even though both the Eighth Amendment and the due process clause of the Fourteenth Amendment serve to protect the same constitutional right," a convicted prisoner had to bring his claim "under the more specific source of protection rather than as a generalized substantive due process claim"); *Ramirez ex rel. Ramirez v. Bexar County*, No. SA-10-CV-0296 FB NN, 2010 WL 5128642, at *1 (W.D. Tex. Dec. 9, 2010)

---

[4] Banks's complaint incorrectly states that he was a pretrial detainee at the time of the alleged offense. Dkt. No. 1 ¶¶ 7, 140, 181. But the Court may consider "any judicially noticed facts" in ruling on a judgment on the pleadings. *Hale*, 963 F.3d at 427. The Court therefore takes judicial notice of the state-court record documenting Banks's conviction on October 4, 2017 (Dkt. No. 52-1). *See Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*, 976 F.3d 585, 589 (5th Cir. 2020) (holding that a district court properly took judicial notice of state-court records).

(Nowak, J.) (finding that "to the extent the [plaintiff's] complaint alleged a violation of the Fourteenth Amendment, that claim should be dismissed" because the plaintiff "was incarcerated pursuant to conviction" at the time of the offense).

In response to Spence's motion for judgment on the pleadings,[5] Banks contends that his "pleadings should be construed liberally," suggesting that this Court should construe his complaint as having been brought under the Eighth Amendment despite its explicit reference to the Fourteenth Amendment and the corresponding legal standard. *See* Dkt. No. 66 at 1–2. Although Fifth Circuit precedent has on occasion given a generic nod to a "liberal" standard for reviewing complaints at this stage,[6] it has done no more than that. *See Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001); *Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899, 904 (5th Cir. 2002); *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 (5th Cir. 2002). Banks fails to cite any authority that requires courts to replace a failed cause of action with a meritorious one, and the Court has found no such authority. Without more, precedent clearly delineating the different types of excessive-force claims precludes this Court from overlooking the legal deficiencies in

---

[5] Notably, when Spence moved for judgment on the pleadings, Banks did not initially respond; instead, he moved to amend his complaint. Dkt. No. 53. Banks only responded when ordered to do so by the Court—well after the period prescribed by the Local Rules. *See* Dkt. Nos. 58; 66; *see also* Loc. Civ. R. 7.1(e). Although not dispositive to the Court's analysis, Banks's resorting to a motion to amend rather than responding to Spence's arguments for dismissal suggests that he recognizes the need for an amendment.

[6] The vast majority of Fifth Circuit precedent that recites this "liberal" standard precedes the Supreme Court's holding in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562–63 (2007) that imposed a heightened pleading standard for the facts in a complaint. Logic therefore dictates that references to a "liberal" standard of review derive from obsolete precedent instructing courts to liberally construe a complaint's facts. Even if that standard still applied, the most generous interpretation of the facts in this case would not enable Banks's complaint to survive dismissal—he still cannot work around his undisputed prisoner status at the time of the alleged offense or his express reliance on the Fourteenth Amendment.

Banks's complaint.  *Cf. Great Plains Tr. Co.*, 313 F.3d at 313 (stating that "judgment on the pleadings is appropriate" when "only questions of law remain").

It is undisputed that Banks was a convicted prisoner at the time of the alleged offense; therefore, he fails to state a claim of excessive force under the Fourteenth Amendment.  Because Banks has not alleged a cognizable constitutional violation, the Court grants Spence's motion for judgment on the pleadings.

**5.     Conclusion**

While the disturbing facts alleged by Banks concern the Court, they cannot materially affect its analysis of the question at issue.  Spence has moved for judgment on the pleadings under the theory that Banks failed to assert his claim of excessive force through the proper legal framework.  The Court—and even Banks—recognize that his complaint as currently pled is legally deficient.  Unfortunately, Banks's counsel failed to exercise the diligence necessary to identify this error sooner, so good cause does not justify permitting Banks to amend his complaint to correct his mistake at this late juncture.  For these reasons, the Court denies Banks's Motion to Amend Pleadings (Dkt. No. 53) and grants Spence's Motion for Judgment on the Pleadings (Dkt. No. 52).

Having resolved this case on the pleadings, the Court need not reach the merits of Spence's Motion for Summary Judgment (Dkt. No. 60); as such, that motion is denied as moot.  The parties' Joint Motion for Continuance of Pretrial Deadlines and Trial (Dkt. No. 75) is also denied as moot.

So ordered on December 12, 2022.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE